# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MAZAK OPTONICS CORPORATION,   )
                              )
            Plaintiff,        )
                              )
      v.                      )   No. 17 C 1023
                              )
DOUG MARLETTE, et al.,        )
                              )
            Defendants.       )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Mazak Optonics Corporation's (Mazak) motion for a preliminary injunction. For the reasons stated below, the motion for a preliminary injunction is granted.

## BACKGROUND

Defendant Doug Marlette (Marlette) was allegedly employed by Mazak. Mazak contends that it discovered that Marlette had, for years, been engaging in a covert scheme to provide a competitor MG Laser, Inc. (MG) with highly confidential and proprietary information from Mazak. Mazak contends that Marlette has violated the terms of the Non-Compete Agreement, Confidentiality Agreement, and Trade Secret Agreement (collectively referred to as "Agreements") signed by Marlette.

1

When Mazak discovered the misconduct and confronted Marlette, he allegedly admitted to engaging in the ongoing scheme to funnel Mazak's trade secrets and proprietary information to MG.  Mazak further contends that it terminated Marlette's employment and that days after Marlette's termination, he set up an Illinois corporation, Defendant DGM Laser Company (DGM).  According to Mazak, Marlette then used Mazak's proprietary information to work with MG and compete with Mazak in violation of the Agreements.  Mazak includes in its second amended complaint trade claims alleging violations of the Defend Trade Secrets Act (DTSA) of 2016, 18 U.S.C. § 1831 *et seq.* (Count I), claims alleging violations of the Illinois Trade Secrets Act (ITSA), 765 ILCS 1065/1 *et seq.* (Count II), a breach of contract claim brought against Marlette (Count III), a breach of fiduciary duty and duty of loyalty claim brought against Marlette (Count IV), tortious interference with prospective economic advantage (TIPEA) claims brought against MG and DGM (Count V), conversion claims brought against all Defendants (Count VI), and tortious interference with contract (TIC) claims brought against MG and DGM (Count VII).  In an opinion entered contemporaneously with this ruling, the court denied MG's motion to dismiss the TIPEA claim  brought against MG (Count V), and granted MG's motion to dismiss the conversion claim brought against MG (Count VI) and the TIC claim brought against MG (Count VII).  Mazak now moves for a preliminary injunction.

## DISCUSSION

The court initially notes that Mazak has moved for both a temporary restraining order (TRO) and a preliminary injunction in the same memorandum. A TRO is a type of emergency relief available to a plaintiff, and the ruling on such a motion is typically based on a cursory presentation of the facts to the court in an expedited fashion. *See Geneva Assur. Syndicate, Inc. v. Med. Emergency Servs. Assocs. (MESA) S.C.*, 964 F.2d 599, 600 (7th Cir. 1992)(stating that "[t]he essence of a temporary restraining order is its brevity, its ex parte character, and (related to the second element) its informality"). Once the parties have taken the opportunity to prepare extensive written arguments and brief the motion such as in the instant action, the motion is more properly considered a motion for a preliminary injunction. The court also notes that MG acknowledges in its response to the instant motion that the proper motion before the court is a motion for a preliminary injunction, (Resp. 5), and MG has not sought any preliminary injunction hearing. In this case, based on the agreed extended briefing schedule for the instant motion, and the breadth of the parties' arguments, this motion is properly adjudicated as a motion for a preliminary injunction rather than a motion for a TRO.

In order to prevail on a motion for a preliminary injunction, the plaintiff must first satisfy the requirements of the threshold stage. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.*, 549 F.3d 1079, 1085-86 (7th Cir. 2008). If the plaintiff satisfies such requirements, the court should proceed to the balancing phase to ascertain whether the motion should be granted. *Id.*; *see also Livable v. City*

*of Chicago*, 2017 WL 955421, at *4 (N.D. Ill. 2017)(explaining two phases); *Hope v. Comm'' of Indiana Dep't of Correction*, 2017 WL 1301569, at *4 (S.D. Ind. 2017)(same).

I.  Threshold Phase

During the threshold phase, a party seeking a preliminary injunction must initially establish: (1) "that absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims," (2) "that traditional legal remedies would be inadequate," and (3) "that its claim has some likelihood of succeeding on the merits."  *Girl Scouts*, 549 F.3d at 1086.  If the moving party fails to satisfy any of the above elements, the court must deny the motion for a preliminary injunction.  *Id.*

A.  Irreparable Harm and Inadequate Remedy at Law

Mazak argues that it will suffer irreparable harm if the motion for a preliminary junction is not granted and that it lacks adequate legal remedies.  Mazak has provided sufficient evidence at this initial phase to show that important confidential and proprietary information has been misappropriated by Marlette without authorization, and is being used by Marlette and MG.  Mazak has also shown that Marlette has been purloining such information for MG's benefit for an extensive amount of time and that there continues to be a risk of irreparable harm to Mazak's good will and customer base due to Marlette's conduct.  It would also be extremely

4

difficult to quantify the precise monetary losses that might continue to be suffered by Mazak due to loss of goodwill, the loss of sales relating to Defendants' misconduct, and the unfair economic advantages that MG has gained through its unlawful use of Mazak's secret information. *See Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1046 (7th Cir. 2017)(stating that a plaintiff is not required to "demonstrate that the remedy be wholly ineffectual," and that there must only be a showing "that any award would be seriously deficient as compared to the harm suffered")(internal quotations omitted)(quoting *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003)). In addition, although MG contends that it has now destroyed some of the confidential information gained from Mazak, Mazak has provided sufficient evidence to show that MG still possesses confidential information. Mazak has thus shown that it will suffer irreparable harm and will be without an adequate legal remedy if the injunction is not granted.

B. Likelihood of Success on the Merits

Mazak argues that it has a strong likelihood of success on the merits. A plaintiff seeking a "preliminary injunctive relief need not demonstrate a likelihood of absolute success on the merits," and "[i]nstead, he must only show that his chances to succeed on his claims are 'better than negligible'" *Whitaker*, 858 F.3d at 1046 (quoting *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999))(stating that "[t]his is a low threshold"). In regard to the remaining claims in this action, Mazak has put forth sufficient evidence to show at this juncture that it is likely to prevail in this

matter. The evidence provided by Mazak indicates that Marlette misappropriated confidential and proprietary information and gave it to MG for its unauthorized use. At his deposition, Marlette admitted he downloaded numerous confidential documents from Mazak's internal server that were not available to third parties and sent them to MG. (Mar. Dep. 55-56). There is also evidence showing that Marlette understood that what he was doing was wrong and violated the Agreements. For example, Marlette also admitted at his deposition that after receiving a letter from Mazak's counsel telling him to preserve evidence of such transfers, Marlette deleted texts, emails, and pictures that documented his funneling of confidential information to MG. (Mar. Dep. 69-70). Marlette further admitted at his deposition that he knew MG was a competitor of Mazak and when asked why he was "assisting a competitor by giving him information or help," he responded only "I don't know why." (Mar. Dep. 59). Mazak has also provided sufficient evidence showing that the information in question includes trade secrets that would be protected by the DTSA and the ITSA. Mazak has also produced evidence showing that Defendants diverted existing customers away from Mazak.

  Defendants have failed to produce sufficient evidence to call into question many facts concerning Marlette's misconduct and Defendants instead focus their arguments on defenses relating to issues such as ownership of trade secrets, statutes of limitations, and statute of frauds. Mazak has put forth sufficient evidence at this preliminary stage to show that certain information in question in this case constitutes trade secrets that have been properly protected by Mazak, and that Mazak has

ownership of such trade secrets. Mazak has also sufficiently identified the trade secrets in question at this preliminary stage of the proceedings. In regard to the statute of frauds, MG has not pointed to sufficient evidence of any pertinent oral agreement that could not be performed within one year. In regard to the statute of limitations defense, MG has shown that at best only a portion of Mazak's claims could be excluded.

Marlette fails to point to evidence to justify his actions under the Agreements and instead seeks to avoid his obligations under such Agreements by arguing that the Agreements are unenforceable. Based on the record at this juncture, the evidence shows that Marlette knowingly and voluntarily signed the Agreements. The provisions in the Agreements such that they unduly prevent Marlette from working and are not unconscionable. The scope and period for the non-compete provisions are properly limited. Marlette also argues that Mazak somehow waived its right to enforce the Agreements, but there is insufficient evidence to support such a conclusion. Based on the court's review of the evidence at this preliminary stage, Mazak has shown a very strong likelihood of success on the merits in regard to the remaining claims in this case.

## II. Balancing Phase

If the moving party satisfies all of the initial requirements for a preliminary injunction, the court must "proceed[] to the balancing phase of the analysis." *Girl Scouts*, 549 F.3d at 1086. During the balancing phase, the court should balance: (1)

the potential harm to the parties, (2) the likelihood of success on the merits, and (3) the public interest. *Id.* The court should employ "a sliding scale approach: [t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Id.* (internal quotations omitted)(quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984)).

### A. Potential Harm to the Parties and Likelihood of Success

Mazak has shown that it could face significant irreparable harm if Marlette and MG are allowed to continue their ongoing use of Mazak's secretes unabated. On the other hand, the evidence shows that Marlette would suffer only minimal hardships as a result of temporary injunctive relief. Marlette chose to work for Mazak and sign the Agreements limiting his use of information and ability to compete and ability to use Mazak's confidential information, and there is nothing unfair in maintaining the status quo at this point to address the merits of Mazak's claims. Mazak has also shown at this juncture a significant likelihood of success on the remaining claims. The sliding scale thus makes the irreparable harm faced by Mazak if temporary injunctive relief is denied of greater importance. Thus, the balancing of harms favors the entry of the preliminary injunction.

### B. Public Interest

Mazak argues that the public interest is promoted by the entry of the

preliminary injunction. The public interest is supported by upholding the sanctity of confidential information such as trade secrets and preventing others from the unauthorized use of such confidential information for their own benefit. There is little incentive in our capitalist system for business to strive to develop trade secrets in order to excel if such secrets can be stolen at will without repercussions and without the protection of the legal system. The public interest is also supported by requiring parties to honor their promises in agreements rather than later avoiding such obligations based on perceived technicalities. Marlette worked for Mazak and was paid and received the benefits accorded to him under the Agreements. Without legal justification, he cannot now avoid his own obligations. The court concludes that the public interest factor favors entry of the preliminary injunction. Based on the above, Mazak has shown that the extraordinary relief in the form of a preliminary injunction is warranted in this case to preserve the status quo. Therefore, Mazak's motion for a preliminary injunction is granted.

## CONCLUSION

Based on the foregoing analysis, Mazak's motion for a preliminary injunction is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 8, 2017